620 A.2d 563

COMMONWEALTH of Pennsylvania, ex rel., William
P. LAFAYETTE, Martha A. McEvoy, Ralph
Minto, Jr. and Melvin R. Henning,

v.

Paul F. BLACK, Appellant.

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1992.

Decided Jan. 13, 1993.

Alan E. Cech, for appellant.

William Claney Smith, for appellees.

Before CRAIG, President Judge, and McGINLEY, J., and LORD, Senior Judge.

McGINLEY, Judge.

Paul F. Black (Black) appeals from an order of the Court of Common Pleas of Allegheny County (common pleas court) that granted a motion for judgment on the pleadings on behalf of Martha McEvoy, Ralph Minto, Jr. and Melvin R. Henning (collectively, Appellees) thus declaring the office of President of the Borough Council of Franklin Park to be vacant. We affirm.

On January 6, 1992, an organizational meeting of the Borough Council of the Borough of Franklin Park was held for the purpose of electing officers. The organizational meeting is statutorily required by Section 1001 of the Borough Code,[1] 53 P.S. § 46001, to be held on the first Monday of January of each even-numbered year.

There are six Borough Council members. Five of the six members attended the January 6, 1992, meeting. At the meeting, four of the five council members voted to elect Black as President of Borough Council. At a subsequent meeting of Borough Council held on February 12, 1992, a motion to remove Black as President was made and properly seconded. Upon a vote of all six council members, the three Appellees voted in favor of the motion (Appellees) and the other three council members voted against. The Mayor attempted to enter a tie-breaking vote in favor of removing Black. However, the Borough Solicitor rendered an opinion that the Mayor could not vote on the issue. As a result, the motion to remove Black was defeated for failure to obtain the majority vote necessary.

Appellees brought a quo warranto action to determine if Black had been validly removed as Borough President. Black filed an answer and new matter. Appellees then filed a motion for judgment on the pleadings, which was granted by the common pleas court. The court then declared the office vacant. Black appeals.

1. Act of February 1, 1966, P.L. (1965) 481, *as amended.*

Black contends that the common pleas court erred in concluding that a borough mayor may vote to break a tie on a vote to remove the Borough Council President in a reorganization of Borough Council pursuant to Section 1001 of the Borough Code, 53 P.S. § 46001. Black specifically contends that pursuant to Sections 1001 and 1003 of the Borough Code, the Mayor's participation is limited to the statutorily required organizational meeting in January of even-numbered years, and that there is no reason why the mayor should be involved in the internal workings of the Borough Council. These issues were raised before the common pleas court and ably disposed of in the comprehensive opinion of the Honorable Ralph H. Smith, Jr., which states in pertinent part:

The only proper justification for the existence of the Borough is that it act as an instrumentality for carrying out its functions on behalf of the people in accordance with the law. However, governments are not human, living creatures and it is for this reason that people elect and select and on their behalf their representatives appoint officers and employees to perform governmental functions. Where a person is not elected or selected for a specific term, it is essential that they be responsive to the needs and desires of the people and if they are not, then they may be removed by the appointing power. If they are elected or appointed for a specific term and do not meet their legal responsibilities, then they can be removed by other representative bodies such as the legislature through impeachment conviction or by several other methods provided by the constitution and the law. What the public does not need nor under which can it long endure is a stymied, do nothing stonewalling government. When the people consented to the constitution they were aware that such a possibility could become a fact. It was with this in mind that the Pennsylvania constitution provides:

"Political Powers

Section 2. All power is inherent in the people, and all governments are founded on their authority and instituted for their peace, safety and happiness. For the ad-

vancement of these ends, they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they think proper." [Const., Art. I, Sec. 2]

The Constitution then goes on to provide:

"Removal of Civil Officers

Section 7 ... Appointed civil officer, ..., may be removed at the pleasure of the power by which they shall have been appointed...." [Const., Art. VI, Section 7]

It is essential that government function when to do so would not offend the essential rights and liberties of the people or do an injustice to their constitution. We also feel that the statutes enacted under the people's constitution should be interpreted to give them the meaning intended by the legislature within the framework of the constitution.

With these precepts in mind, we approached the determination of the first subset issue:

A. COULD THE MAYOR VOTE ON THE MOTION TO OUST BLACK AS PRESIDENT OF COUNCIL?

The Borough Code [Act of 1966–481, Sec. 1029, 53 P.S. Sec. 46029] provides that:

"It shall be the duty of the mayor:

(1) ..., ... to perform such other duties as shall be vested in his office by law or ordinance.";

and in section 1003, 53 P.S. Sec. 46003, it states:

"The mayor shall preside over the organization of the council, until it is organized as provided in Section 1001, and he shall be deemed a member of council at the organization meeting if his membership shall become necessary to constitute a quorum, but he shall not vote thereat unless his vote shall, for any reason whatsoever, be required to effect the organization of council, or to elect any officer who is required to be or may be elected at the organization meeting."

In accordance with the referenced sections of the Borough Code, the mayor, inter alia, has the duty to "preside over the organization of council," be deemed a member of council

if his membership shall become necessary to constitute a quorum, and he can vote where "his vote shall, for any reason whatsoever, be required . . ., to elect any officer who is required to be or may be elected at the organization meeting." We held that the mayor is part of the appointing "power" as contemplated in Art. VI, Section 7, which provides for the removal of appointed civil officers particularly where, as here, there was a tie among the council membership. The Constitution gives the appointing power the right to remove its president at its pleasure and the Borough Code gives the mayor the right to vote on the motion of ouster whenever required "for any reason whatsoever." The mayor performed his duty and exercised his right as a part of the "appointing power" by breaking the tie by casting an affirmative vote. With his vote, the motion to oust Black as council president carried and the office of President of the Borough Council became vacant.

In addition to being part of the "appointing power" and thus empowered to vote to break the tie in accordance with the Constitution and the Borough Code, *supra*, we held that the Borough Code gave the mayor the power to break tie votes in cases such as the one *sub judice*. The Borough Code provides:

"In any cases where by reason of a tie or split vote, the council of any borough shall be unable to enact or pass any . . . motion, or declare or fill any vacancy in its membership, or in any other borough office, *or to take any action on any matter lawfully brought before it, the Mayor . . . may at his option cast the deciding vote . . . .*" Act of 1966–581, Sec. 1003, 53 P.S. Sec. 46003. (Emphasis supplied)

Here the motion to oust the president of council resulted in a tie or split vote among the elected members of the borough council. This motion was, as we have indicated and as Black has admitted in his pleadings, a matter lawfully before council. In accordance with the Borough Code the mayor opted to vote and in doing so broke the tie and the motion carried.

Opinion of the Common Pleas Court (*Commonwealth ex rel., Lafayette v. Black*, (Allegheny County Civil Division No. GD 92–03120, order filed May 19, 1992)), at 3–6.

We find the common pleas court's reasoning to be persuasive and affirm on the basis of that opinion.

## ORDER

AND NOW, this 13th day of January, 1992, the May 19, 1992, order of the Court of Common Pleas of Allegheny County is affirmed.